UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Judge Hellerstein

-------------------------------------------------------------- x
                              :

ARISTA RECORDS LLC, a Delaware limited
liability company; ATLANTIC RECORDING
CORPORATION, a Delaware corporation; BMG
MUSIC, a New York general partnership;
CAPITOL RECORDS, INC., a Delaware
corporation; CAROLINE RECORDS, INC., a
New York corporation; ELEKTRA
ENTERTAINMENT GROUP INC., a Delaware
corporation; INTERSCOPE RECORDS, a
California general partnership; LAFACE
RECORDS LLC, a Delaware limited liability
company; LOUD RECORDS LLC, a Delaware
corporation; MAVERICK RECORDING
COMPANY, a California joint venture;
MOTOWN RECORD COMPANY, L.P., a
California limited partnership; NONESUCH
RECORDS INC., a Delaware corporation;
PRIORITY RECORDS LLC, a California limited
liability company; SONY BMG MUSIC
ENTERTAINMENT, a Delaware general
partnership; UMG RECORDINGS, INC., a
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation;
WARNER BROS. RECORDS INC., a Delaware
corporation; and ZOMBA RECORDING LLC, a
Delaware limited liability company,

             Plaintiffs,

      -against-

DOES 1 - 43,

             Defendants.

07 CV 11509

Civil Action No.:

-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

## I.    INTRODUCTION

        Plaintiffs, record companies who own the copyrights in the most popular sound

recordings in the United States, seek leave of the Court to serve limited, immediate discovery on

a third party Internet Service Provider ("ISP") to determine the true identities of Doe Defendants,

who are being sued for direct copyright infringement. Without such discovery, Plaintiffs cannot identify the Doe Defendants, and thus cannot pursue their lawsuit to protect their copyrighted works from repetitive, rampant infringement.[1]

As alleged in the complaint, the Doe Defendants, without authorization, used an online media distribution system (*e.g.*, a peer-to-peer or "P2P" system) to download Plaintiffs' copyrighted works and/or distribute copyrighted works to the public. See Declaration of Carlos Linares ("Linares Decl."), ¶ 18 (attached hereto as Exhibit A). Although Plaintiffs do not know the true names of the Doe Defendants,[2] Plaintiffs have identified each Defendant by a unique Internet Protocol ("IP") address assigned to that Defendant on the date and at the time of that Defendant's infringing activity. Id. Additionally, Plaintiffs have gathered evidence of the infringing activities. Id. ¶¶ 14-15, 19. Plaintiffs have downloaded a sample of several of the sound recordings each Defendant illegally distributed and have evidence of every file (at times numbering in the thousands) that each Defendant illegally distributed to the public. Id.

Plaintiffs have identified the ISP that provided Internet access to each Defendant by using a publicly available database to trace the IP address for each Defendant. Id. ¶¶ 12, 18. Here, the ISP is Columbia University ("Columbia"). Id. When given a Defendant's IP address and the date and time of infringement, an ISP quickly and easily can identify the name and address of the Doe Defendant (*i.e.,* the ISP's subscriber) because that information is contained in

---

[1] Because Plaintiffs do not currently know the identity of any of the Defendants, Plaintiffs cannot ascertain any of the Defendants' positions on this *Ex Parte* Application.

[2] When using a P2P system (*e.g.*, Ares, eDonkey, Gnutella, BitTorrent, or DirectConnect), Defendants typically use monikers, or user names, and not their true names. Linares Decl., ¶ 10. Plaintiffs have no ability to determine a Defendant's true name other than by seeking the information from the ISP. Id. ¶¶ 10, 16.

the ISP's subscriber activity log files. Id. ¶ 16.[3] Plaintiffs' experience is that ISPs typically keep log files of subscriber activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data. Id. ¶ 24. Plaintiffs alert the ISP to the existence of the copyright claims shortly after identifying the infringing activity and ask the ISP to maintain the log files.

Plaintiffs now seek leave of the Court to serve limited, immediate discovery on Columbia to identify each Defendant. Plaintiffs intend to serve a Rule 45 subpoena on Columbia seeking documents, including electronically-stored information, sufficient to identify each Defendant's true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. For any IP addresses that Columbia cannot link to a specific Defendant, Plaintiffs seek all documents and electronically-stored information relating to the assignment of that IP address at the date and time the IP address was used to infringe Plaintiffs' copyrighted sound recordings. Once Plaintiffs learn a Defendant's identifying information, Plaintiffs will attempt to contact that Defendant and attempt to resolve the dispute. If the dispute is not resolved and it is determined that it would be more appropriate to litigate the copyright infringement claims in another jurisdiction, Plaintiffs will dismiss that Defendant from the present lawsuit and re-file in the appropriate jurisdiction. Without the ability to obtain the Doe Defendants' identifying information, however, Plaintiffs may never be able to pursue their lawsuit to protect their copyrighted works from repeated infringement. Id. ¶ 24.

---

[3] ISPs own or are assigned certain blocks or ranges of IP addresses. A subscriber gains access to the Internet through an ISP after setting up an account with the ISP. An ISP then assigns a particular IP address in its block or range to the subscriber when that subscriber goes "online." After reviewing the subscriber activity logs (which contain the assigned IP addresses), an ISP can identify its subscribers by name. See Linares Decl., ¶ 16.

Moreover, the infringement may be ongoing such that immediate relief is necessary. Thus, the need for the limited, immediate discovery sought in this *Ex Parte* Application is critical.

## II.    BACKGROUND

The Internet and P2P networks have spawned an illegal trade in copyrighted works. See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 923 (U.S. 2005). By downloading P2P software, and logging onto a P2P network, an individual can upload (distribute) or download (copy), without authorization, countless copyrighted music and video files to or from any other P2P network user worldwide. See id. at 920 (detailing the process used by infringers to download copyrighted works); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001) (stating that infringers use P2P networks to copy and distribute copyrighted works); Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), aff'd sub nom., Universal City Studios, Inc. v. Corley, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file). Until enjoined, Napster was the most notorious online media distribution system. Grokster, 545 U.S. at 924. Notwithstanding the Napster Court's decision, similar online media distribution systems emerged that have attempted to capitalize on the growing illegal market that Napster fostered. These include Ares, KaZaA, eDonkey, BitTorrent, DirectConnect, and Gnutella, among others. Linares Decl., ¶ 6. Despite the continued availability of such systems, there is no dispute that the uploading and downloading of copyrighted works without authorization is copyright infringement. Napster, 239 F.3d at 1014-15; In re Aimster Copyright Litig., 334 F.3d 643 (7th Cir. 2003), cert. denied, 124 S. Ct. 1069 (2004). Nonetheless, at any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted

material. Linares Decl., ¶ 6. More than 2.6 *billion* infringing music files are downloaded monthly. L. Grossman, *It's All Free*, Time, May 5, 2003, at 60-69.

The propagation of illegal digital copies over the Internet significantly harms copyright owners, and has had a particularly devastating impact on the music industry. Linares Decl., ¶ 9. The RIAA member companies lose significant revenues on an annual basis due to the millions of unauthorized downloads and uploads of well-known recordings that are distributed on P2P networks. Id. ¶ 9. Evidence shows that the main reason for the precipitous drop in revenues is that individuals are downloading music illegally for free, rather than buying it. See In re Aimster Copyright Litig., 334 F.3d at 645.

## III.    ARGUMENT

Courts, including this circuit, routinely allow discovery to identify "Doe" defendants. See Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal; *pro se* plaintiff should have been permitted to conduct discovery to reveal identity of the defendant); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny the plaintiff's motion to join John Doe defendant where identity of John Doe could have been determined through discovery); Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985) (error to dismiss claim merely because the defendant was unnamed; "Rather than dismissing the claim, the court should have ordered disclosure of the Officer Doe's identity"); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery").

Indeed, in similar copyright infringement cases brought by Plaintiffs, and/or other record companies, against Doe defendants for infringing copyrights over P2P networks, many courts, including this Court, have granted Plaintiffs' motions for leave to take expedited discovery. See, e.g., Order, Capitol Records, Inc. v. Does 1-250, No. 04 CV 472 (LAK) (S.D.N.Y. Jan. 26, 2004); Order, Sony BMG Music Ent't v. Does 1-2, Civil Action No. 5:04-cv-1253 (NAM/GHL) (N.D.N.Y. Nov. 5, 2004); Order, Virgin Records Am., Inc. v. Does 1-3, Civil Action No. 3-04-cv-701 (JCH) (D. Conn. April 29, 2004) (true and correct copies of these Orders are attached hereto as Exhibit B). This Court should not depart from its well-reasoned decisions, or the well-reasoned decisions of other courts that have addressed this issue directly.

Courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes "good cause" for such discovery. See UMG Recordings, Inc., 2006 U.S. DIST. LEXIS 32821 (N.D. Cal. Mar. 6, 2000); Entertainment Tech. Corp. v. Walt Disney Imagineering, No. Civ. A. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. Oct. 2, 2003) (applying a reasonableness standard); Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); Yokohama Tire Corp. v. Dealers Tire Supply, Inc., 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard); Energetics Sys. Corp. v. Advanced Cerametrics, No. 95-7956, 1996 U.S. Dist. LEXIS 2830, *5-6 (E.D. Pa. March 8, 1996) (good cause standard satisfied where the moving party had asserted claims of infringement). Plaintiffs easily have met this standard.

First, good cause exists where, as here, the complaint alleges claims of infringement. See Interscope Records v. Does 1-14, No. 5:07-4107-RDR, 2007 U.S. Dist. LEXIS 73627, *3 (D. Kan. Oct. 1, 2007) (citations omitted) ("Good cause can exist in cases involving claims of infringement and unfair competition); Energetics Sys. Corp., 1996 U.S. Dist.

LEXIS 2830 at *5-6 (good cause standard satisfied where the moving party had asserted claims of infringement); <u>see also</u> <u>Semitool</u>, 208 F.R.D. at 276; <u>Benham Jewelry Corp. v. Aron Basha Corp.</u>, No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This is not surprising, since such claims necessarily involve irreparable harm to the plaintiff. 4 Melville B. Nimmer & David Nimmer, <u>Nimmer On Copyright</u> § 14.06[A], at 14-103 (2003); <u>see also</u> <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 315 F.3d 1034, 1042 (8th Cir. 2003); <u>Health Ins. Ass'n of Am. v. Novelli</u>, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); <u>ABKCO Music, Inc. v. Stellar Records, Inc.</u>, 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is very real danger the ISP will not long preserve the information that Plaintiffs seek. As discussed above, ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Linares Decl., ¶ 24. If that information is erased, Plaintiffs will have *no* ability to identify Defendants, and thus will be unable to pursue their lawsuit to protect their copyrighted works. <u>Id.</u> Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. <u>Interscope Records</u>, 2007 U.S. Dist. LEXIS 73627 at *3 (citation omitted); See also <u>Metal Bldg. Components, L.P. v. Caperton</u>, CIV-04-1256 MV/DJS, 2004 U.S. Dist. LEXIS 28854, *10-11 (D.N.M. April 2, 2004) ("Good cause is frequently found . . . when physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation.") (citation omitted); <u>Pod-Ners, LLC v. Northern Feed & Bean</u>, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing the plaintiff expedited discovery to inspect "beans" in

the defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. See Semitool, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). Plaintiffs seek immediate discovery to identify Defendants; information that may be erased very soon. Plaintiffs (who continue to be harmed by Defendants' copyright infringement, Linares Decl., ¶ 9), cannot wait until after the Rule 26(f) conference (ordinarily a prerequisite before propounding discovery) because there are no known defendants with whom to confer (and thus, no conference is possible). There is no prejudice to Defendants because Plaintiffs merely seek information to identify Defendants and to serve them, and Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws. See Metal Bldg. Components, L.P., 2004 U.S. Dist. LEXIS 28854 at *12 (where "the requested discovery is relevant and will be produced in the normal course of discovery," the court was "unable to discern any prejudice or hardship to Defendant" if discovery is conducted "on an expedited basis.").

Fourth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." Semitool, 208 F.R.D. at 277. Here, the present lawsuit cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other information Plaintiffs can obtain about Defendants without discovery from the ISP. As shown by the Declaration of Carlos Linares, Plaintiffs already have developed a substantial case on the merits against each infringer. Plaintiffs' complaint alleges a *prima facie*

claim for direct copyright infringement. Plaintiffs have alleged that they own and have

registered the copyrights in the works at issue, and that Defendants copied or distributed those

copyrighted works without Plaintiffs' authorization. See Complaint. These allegations state a

claim of copyright infringement. Nimmer On Copyright § 31.01, at 31-3 to 31-7; Feist

Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). In addition, Plaintiffs have

copies of a sample of several of the sound recordings that each Defendant illegally distributed to

the public and have evidence of every file that each Defendant illegally distributed to the public.

See Complaint Ex. A; Linares Decl., ¶¶ 18-19. These more complete lists often show thousands

of files, many of them sound recordings (MP3 files) that are owned by, or exclusively licensed

to, Plaintiffs. See Linares Decl., ¶ 19. Plaintiffs believe that virtually all of the sound recordings

have been downloaded and/or distributed to the public without permission or consent of the

respective copyright holders. Id. Absent limited, immediate discovery, Plaintiffs will be unable

to obtain redress for any of this infringement.

Finally, Plaintiffs request that the Court make clear that Columbia is authorized to

respond to the subpoena pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C.

1232g ("FERPA"). Though FERPA generally prohibits disclosure of certain records by

federally-funded educational institutions, it *expressly* provides that information can be disclosed

pursuant to court order. *See* 20 U.S.C. § 1232g(b)(2)(B). While Plaintiffs do not believe

FERPA prevents the disclosure of the information requested in the subpoena,[4] universities and

colleges have expressed concern about their obligations under FERPA, and some have taken the

position that a court order is required before they will disclose subscriber information. Hence,

---

[4] Plaintiffs do not concede that FERPA prevents Columbia University, from disclosing
the type of information being requested by Plaintiffs, but believe that a properly framed court
order will make resolution of that issue unnecessary.

Plaintiffs seek an appropriate order explicitly authorizing Columbia to comply with the subpoena under 20 U.S.C. § 1232g(b)(2)(B).

If the Court grants this *Ex Parte* Application, Plaintiffs will serve a subpoena on Columbia requesting documents that identify the true names and other information about Defendants within 15 business days. Columbia then will be able to notify its subscribers that this information is being sought, and each Defendant will be able to raise any objections before this Court in the form of a motion to quash prior to the return date of the subpoena. Thus, to the extent that any Defendant wishes to object, he or she will be able to do so.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the *Ex Parte* Application and enter an Order substantially in the form of the attached Proposed Order.

Dated: New York, New York
    December 26, 2007

By: _____
    Brian E. Moran (BM-8573)
    Victor B. Kao (VK-6967)
    Robinson & Cole LLP
    885 Third Avenue, Suite 2800
    New York, NY 10022-4834
    Telephone: (212) 451-2900
    Fax: (212) 451-2999

# Exhibit A

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
ARISTA RECORDS LLC, a Delaware limited        :
liability company; ATLANTIC RECORDING
CORPORATION, a Delaware corporation; BMG      :
MUSIC, a New York general partnership;
CAPITOL RECORDS, INC., a Delaware            :   Civil Action No.:
corporation; CAROLINE RECORDS, INC., a
New York corporation; ELEKTRA                 :
ENTERTAINMENT GROUP INC., a Delaware
corporation; INTERSCOPE RECORDS, a           :
California general partnership; LAFACE
RECORDS LLC, a Delaware limited liability     :
company; LOUD RECORDS LLC, a Delaware
corporation; MAVERICK RECORDING              :
COMPANY, a California joint venture;
MOTOWN RECORD COMPANY, L.P., a               :
California limited partnership; NONESUCH
RECORDS INC., a Delaware corporation;        :
PRIORITY RECORDS LLC, a California limited
liability company; SONY BMG MUSIC            :
ENTERTAINMENT, a Delaware general
partnership; UMG RECORDINGS, INC., a         :
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation;      :
WARNER BROS. RECORDS INC., a Delaware
corporation; and ZOMBA RECORDING LLC, a      :
Delaware limited liability company,
                                              :
                         Plaintiffs,
                                              :

            -against-                         :

DOES 1 - 43,                                  :

                         Defendants.          x
-----------------------------------------------------x

**DECLARATION OF CARLOS LINARES IN SUPPORT OF *EX PARTE* APPLICATION
FOR LEAVE TO TAKE IMMEDIATE DISCOVERY**

        I, Carlos Linares, have personal knowledge of the facts stated below and, under

penalty of perjury, hereby declare:

1.    I am Vice President, Anti-Piracy Legal Affairs for the Recording Industry Association of America, Inc. ("RIAA"), where I have been employed for over six years. My office is located at 1025 F Street, N.W., 10th Floor, Washington, DC 20004. I submit this Declaration in support of Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery.

2.    As Vice President, Anti-Piracy Legal Affairs, I am responsible for evaluating and contributing to online strategies for the RIAA, including oversight of the investigations into online infringement of copyrighted sound recordings. As such, this Declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

### The RIAA's Role in Protecting Its Member Recording Industry Companies From Copyright Infringement

3.    The RIAA is a not-for-profit trade association whose member record companies create, manufacture, and/or distribute approximately ninety percent of all legitimate sound recordings produced and sold in the United States. The RIAA's member record companies comprise the most vibrant national music industry in the world. A critical part of the RIAA's mission is to assist its member companies in protecting their intellectual property in the United States and in fighting against online and other forms of piracy. All of the Plaintiffs in this action are members of the RIAA.

4.    As part of that process, the RIAA, on behalf of its members, retains a variety of services from outside vendors to assist with its investigation of the unauthorized reproduction and distribution of copyrighted sound recordings online.

## The Internet and Music Piracy

5.      The Internet is a vast collection of interconnected computers and computer networks that communicate with each other.  It allows hundreds of millions of people around the world to communicate freely and easily and to exchange ideas and information, including academic research, literary works, financial data, music, movies, graphics, and an unending and ever-changing array of other data.  Unfortunately, the Internet also has afforded opportunities for the wide-scale piracy of copyrighted sound recordings and musical compositions.  Once a sound recording has been transformed into an unsecured digital format, it can be copied further and distributed an unlimited number of times over the Internet, without significant degradation in sound quality.

6.      Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems.  The most notorious example of such a system was Napster, which was enjoined by a federal court.  Notwithstanding the court's decision enjoining Napster, similar online media distribution systems emerged and attempted to capitalize on the growing illegal market that Napster fostered.  These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others.  To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy.  At any given moment, millions of people illegally use online media distribution systems to upload or download copyrighted material.

7.      P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to:  (1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  P2P networks enable users who otherwise would have no connection with, or

3

knowledge of, each other to offer to each other for distribution and copying files off of their

personal computers, to provide a sophisticated search mechanism by which users can locate these

files for downloading, and to provide a means of effecting downloads.

8.      The major record companies generally have not authorized their

copyrighted sound recordings to be copied or distributed in unsecured formats by means of P2P

networks. Thus, the vast majority of the content that is copied and distributed on P2P networks

is unauthorized by the copyright owner – that is, the distribution violates the copyright laws.

9.      The scope of online piracy of copyrighted works cannot be

underestimated. The RIAA member companies lose significant revenues on an annual basis due

to the millions of unauthorized downloads and uploads of well-known recordings that are

distributed on P2P networks by infringers who, in virtually all cases, have the ability to maintain

their anonymity to all but the Internet Service Provider ("ISP") they use to supply them with

access to the Internet.

10.     The persons who commit infringements by using the P2P networks are, by

and large, anonymous to Plaintiffs. A person who logs on to a P2P network is free to use any

alias (or computer name) whatsoever, without revealing his or her true identity to other users.

Thus, Plaintiffs can observe the infringement occurring on the Internet, but do not know the true

names or mailing addresses of those individuals who are committing the infringement.

## The RIAA's Identification of Copyright Infringers

11.     In order to assist its members in combating copyright piracy, the RIAA

retained a third-party investigator, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the

Internet, as well as file-copying services, for infringing copies of sound recordings whose

copyrights are owned by RIAA members. A search can be as simple as logging onto a P2P

network and examining what files are being offered by others logged onto the network. In

4

gathering evidence of copyright infringement, MediaSentry uses the same functionalities that are built into P2P programs that any user of the software can use on the network.

12.     Users of P2P networks who distribute files over a network can be identified by using Internet Protocol ("IP") addresses because the unique IP address of the computer offering the files for distribution can be captured by another user during a search or a file transfer. Users of P2P networks can be identified by their IP addresses because each computer or network device (such as a router) that connects to a P2P network must have a unique IP address within the Internet to deliver files from one computer or network device to another. Two computers cannot effectively function if they are connected to the Internet with the same IP address at the same time. This is analogous to the telephone system where each location has a unique number. For example, in a particular home, there may be three or four different telephones, but only one call can be placed at a time to or from that home. Each computer or network device is connected to a network that is administered by an organization like a business, ISP, college, or university. Each network, in turn, is analogous to an area code. The network provider maintains a log of IP address allocations. An IP address can be associated with an organization such as an ISP, business, college, or university, and that organization can identify the P2P network user associated with the specified IP address.

13.     MediaSentry finds individuals using P2P networks to share music files over the Internet. Just as any other user on the same P2P networks as these individuals would be able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the users' IP addresses because the P2P software being used by those individuals has file-sharing features enabled.

14.    For each suspected infringer, MediaSentry downloads a number of the music files that the individual is offering to other users on the P2P network. Those music files for each such individual are listed in Exhibit A to the Complaint. MediaSentry assigns an identification number to each individual for which it detects copyright infringement and gathers additional evidence for each individual, such as metadata accompanying each file being disseminated that demonstrates that the user is engaged in copyright infringement. That evidence includes download data files that show for each music file the source IP address, user logs that include a complete listing of all files in the individual's share folder at the time, and additional data that track the movement of the files through the Internet.

15.    After MediaSentry collects the evidence of infringement, the RIAA engages in a painstaking process to verify whether each individual was infringing. That process relies on human review of evidence supporting the allegation of infringement. For each suspected infringer, the RIAA reviews a listing of the music files that the user has offered for download by others from his or her computer in order to determine whether they appear to be copyrighted sound recordings. The RIAA also listens to the downloaded music files from these users in order to confirm that they are, indeed, illegal copies of sound recordings whose copyrights are owned by RIAA members. Exhibit A to the Complaint lists the details of these downloaded music files. In my role as Vice President, Anti-Piracy, I provide oversight over the review of the lists contained in Exhibit A to the Complaint and hereby attest to the veracity of those lists. The RIAA also reviews the other evidence collected by MediaSentry.

### The Subpoena Process to Identify Copyright Infringers

16.    The RIAA frequently has used the subpoena processes of Federal Rule of Civil Procedure 45 and the Digital Millennium Copyright Act ("DMCA") to obtain the names of infringers from ISPs. The RIAA typically has included in their subpoenas to ISPs an IP address

and a date and time on which the RIAA, through its agent, MediaSentry, observed use of the IP

address in connection with allegedly infringing activity. In some instances, providing the IP

address alone to the ISP has been enough to enable the ISP to identify the infringer. Providing

the date and time further assists some ISPs in identifying infringers, especially ISPs that use

"dynamic IP addressing" such that a single computer may be assigned different IP addresses at

different times, including, for example, each time it logs into the Internet.[1] Once provided with

the IP address, plus the date and time of the infringing activity, the infringer's ISP quickly and

easily can identify the computer from which the infringement occurred (and the name and

address of the subscriber that controls that computer), sometimes within a matter of minutes.

   17. Since 1998, the RIAA and others have used subpoenas thousands of times

to learn the names, addresses, telephone numbers, and e-mail addresses of infringers for the

purpose of bringing legal actions against those infringers. During a recent litigation with

Verizon (an ISP) relating to the DMCA subpoena process, Verizon conceded that, as an

alternative to the DMCA process, Plaintiffs could file "Doe" lawsuits and issue Rule 45

subpoenas to ISPs to obtain the true identities of infringing subscribers.

### The RIAA's Identification of the Infringers in This Case

   18. In the ordinary course of investigating online copyright infringement, the

RIAA became aware that Defendants were offering files for download on various P2P networks.

The user-defined author and title of the files offered for download by each Defendant suggested

that many were copyrighted sound recordings being disseminated without the authorization of

the copyright owners. The RIAA downloaded and listened to a representative sample of the

music files being offered for download by each Defendant and was able to confirm that the files

---

[1] ISPs own or are assigned certain blocks or ranges of IP addresses. An ISP assigns a
particular IP address in its block or range to a subscriber when that subscriber goes "online."

each Defendant was offering for distribution were illegal copies of sound recordings whose

copyrights are owned by RIAA members. The RIAA also recorded the time and date at which

the infringing activity was observed and the IP address assigned to each Defendant at the time.

See Complaint Exhibit A. The RIAA could not, however, determine the physical location of the

users or their identities. The RIAA could determine that Defendants were all using Columbia

University internet service to distribute and make available for distribution the copyrighted files.

19.     The RIAA also has collected for each Defendant a list of the files each

Defendant has made available for distribution to the public. These lists often show thousands of

files, many of which are sound recording (MP3) files that are owned by, or exclusively licensed

to, Plaintiffs. Because of the voluminous nature of the lists, and in an effort not to overburden

the Court with paper, I have not attached to this Declaration those lists. Such lists will be made

available to the Court upon request. Exhibit A to the Complaint includes the username of the

infringer if that was available, the identification number assigned by MediaSentry for that

Defendant, and the number of audio files that were being shared by Defendant at the time that

the RIAA's agent, MediaSentry, observed the infringing activity.

### The Importance of Expedited Discovery in This Case

20.     Obtaining the identity of copyright infringers on an expedited basis is

critical to stopping the piracy of the RIAA members' copyrighted works.

21.     First, every day that copyrighted material is disseminated without the

authorization of the copyright owner, the copyright owner is economically harmed. Prompt

identification of infringers is necessary in order for copyright owners to take quick action to stop

unlawful dissemination of their works and minimize their economic losses.

22.     Second, infringement often occurs with respect to sound recordings that

have not yet been distributed publicly. Such infringement inflicts great harm on the initial

8

market for new works. New recordings generally earn a significant portion of their revenue when they are first released, and copyright piracy during a recording's pre-release or early release period therefore deprives copyright owners of an important opportunity to reap the benefits of their labor.

23. Third, without expedited discovery, Plaintiffs have no way of serving Defendants with the complaint and summons in this case. Plaintiffs do not have Defendants' names or addresses, nor do they have an e-mail address for Defendants.

24. Fourth, and perhaps most critically, ISPs have different policies pertaining to the length of time they preserve "logs" which identify their users. ISPs keep log files of their user activities for only limited periods of time – which can range from as short as a few days, to a few months – before erasing the data they contain. If an ISP does not respond expeditiously to a discovery request, the identification information in the ISP's logs may be erased, making it impossible for the ISP to determine the identity of the infringer and eliminating the copyright owner's ability to take action to stop the infringement.

*[Remainder of page intentionally left blank.]*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on _December 18_, 2007 in Washington, D.C.

_Carlos Linares_

Carlos Linares

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

CAPITOL RECORDS, INC., a Delaware
corporation; ARISTA RECORDS, INC., a
Delaware corporation; INTERSCOPE
RECORDS, a California general partnership;
LOUD RECORDS, LLC, a Delaware corporation;
UMG RECORDINGS, INC., a Delaware
corporation; WARNER BROS. RECORDS INC.,
a Delaware corporation; ATLANTIC
RECORDING CORPORATION, a Delaware
corporation; FONOVISA, INC., a California
corporation; SONY MUSIC ENTERTAINMENT
INC., a Delaware corporation; BMG MUSIC, a
New York general partnership; LONDON-SIRE
RECORDS INC., a Delaware corporation;
MOTOWN RECORD COMPANY, L.P., a
California limited partnership; PRIORITY
RECORDS LLC, a California limited liability
company; MAVERICK RECORDING
COMPANY, a California joint venture;
ELEKTRA ENTERTAINMENT GROUP INC., a
Delaware corporation; and VIRGIN RECORDS
AMERICA, INC., a California corporation,

        Plaintiffs,

        -against-

DOES 1 - 250,

        Defendants.

-------------------------------------------------------------- x

:
:
:
:  Civil Action No.: 04 CV 472 (LAK)(HBP)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY

      Upon the *ex parte* application of Plaintiffs to take immediate discovery, the annexed

declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of J.

Christopher Jensen, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Time Warner Cable to

obtain the identity each Doe Defendant by requesting the name, address, telephone number, e-

mail address, and Media Access Control addresses for each Defendant.  ~~The disclosure of this~~

~~information is ordered pursuant to 47 U.S.C. § 551(c)(2)(B).~~

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response

to the discovery requests may be used by Plaintiffs solely for the purpose of protecting Plaintiffs'

rights under the Copyright Act.

Dated: ___1/16/04___

_____
United States District Judge

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

ELEKTRA ENTERTAINMENT GROUP INC., a
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation;
ARISTA RECORDS LLC, a Delaware limited
liability company; WARNER BROS. RECORDS
INC., a Delaware corporation; UMG
RECORDINGS, INC., a Delaware corporation;
and SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership,

Plaintiffs,

v.

DOES 1-3,

Defendants.

**[PROPOSED] ORDER GRANTING
PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY**

Case No.: CV

**05   CV   6693**

Upon Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

the annexed Declaration of Steven E. Cole, Esq., the annexed Declaration of Jonathan Whitehead

and the exhibit thereto, and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on Rochester Institute

of Technology to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that

seeks information sufficient to identify each Doe Defendant, including the name, address,

telephone number, e-mail address, and Media Access Control addresses for each Defendant.

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

Plaintiffs' rights under the Copyright Act.

Dated: 12/6/05

_____
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ELEKTRA ENTERTAINMENT GROUP INC., a     :
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation; BMG
MUSIC, a New York general partnership; SONY
BMG MUSIC ENTERTAINMENT, a Delaware     :
general partnership; and UMG RECORDINGS,
INC., a Delaware corporation,           :

                Plaintiffs,     :

        -against-     :

JOHN DOE,     :

           Defendant.     :

---------------------------------------------------------x

**04-4230**

Civil Action No.:

HURLEY, J.

ORENSTEIN, M.J.

### [PROPOSED] ORDER GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO TAKE IMMEDIATE DISCOVERY

Upon the *ex parte* application of Plaintiffs to take immediate discovery, the annexed declaration of Jonathan Whitehead and the exhibit thereto, the annexed declaration of J. Christopher Jensen, Esq., and the accompanying Memorandum of Law, it is hereby:

ORDERED that Plaintiffs may serve immediate discovery on SUNY College at Old Westbury to obtain the identity of the Doe Defendant by serving a Rule 45 subpoena that seeks information sufficient to identify him or her, including the name, address, telephone number, e-mail address, and Media Access Control addresses for the Defendant.

JAN-31-2005  16:37        DENIS R. HURLEY, U.S.D.J.                    P.03/03

IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

Dated: 1/31/05
CENTRAL ISLIP, N.Y.

_____
United States District Judge   , E.D.N.Y.

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership; ARISTA
RECORDS LLC, a Delaware limited liability
company; BMG MUSIC, a New York general
partnership; UMG RECORDINGS, INC., a
Delaware corporation; and VIRGIN RECORDS
AMERICA, INC., a California corporation,

                    Plaintiffs,

          -against-

DOES 1-2,

                    Defendants.

[PROPOSED] ORDER GRANTING
PLAINTIFFS' *EX PARTE*
APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY

Civil Action No.: 5:04-CV-1253
(NAM|GHL)

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
NOV - 5 2004
AT_____O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

          Upon Plaintiffs' *Ex Parte* Application for Leave to Take Immediate Discovery,

the annexed Declaration of Steven E. Cole, Esq., the annexed Declaration of Jonathan Whitehead

and the exhibit thereto, and the accompanying Memorandum of Law, it is hereby:

          ORDERED that Plaintiffs may serve immediate discovery on Morrisville State

College, State University of New York to obtain the identity of each Doe Defendant by serving a

Rule 45 subpoena that seeks information sufficient to identify each Doe Defendant, including the

name, address, telephone number, e-mail address, and Media Access Control addresses for each

Defendant.

          IT IS FURTHER ORDERED THAT any information disclosed to Plaintiffs in

response to the Rule 45 subpoena may be used by Plaintiffs solely for the purpose of protecting

Plaintiffs' rights under the Copyright Act.

Dated: November 5, 2004

_____
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VIRGIN RECORDS AMERICA, INC. :
ET AL :
    Plaintiffs                :      CIVIL ACTION NO.
                             :      3-04-cv-701 (JCH)
v. :
                             :
DOES 1 - 3 :      APRIL 29, 2004
    Defendants :

ORDER GRANTING PLAINTIFFS'
MOTION FOR EXPEDITED DISCOVERY [DKT. NO. 5-1]

Upon the Motion of plaintiffs for Expedited Discovery, the supporting Memorandum of Law, and the declaration of Jonathan Whitehead and the exhibit thereto, the court finds there is good cause for expedited discovery, in particular, to preserve evidence and to identify the defendants for service.

It is therefore ORDERED that:

1.    Plaintiffs may serve immediate discovery on Patriot Media & Communications ("Patriot") to obtain the identity of Doe defendants 1, 2 and 3 by serving a Rule 45 subpoena that seeks information sufficient to identify each Doe defendant, including the name, address, telephone number, e-mail address, and Media Access Control address for each defendant.

2.    If and when Patriot is served with a subpoena, within five business days thereof, it shall give notice (notice via email is sufficient) of the subpoena to the subscribers in question. If Patriot and/or any defendant wishes to move to quash the subpoena, the